IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SEAUN FARTHING, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:19CV195–HEH
)
LT. I. GODFREY, *et al.*, )
)
    Defendants. )

### MEMORANDUM OPINION
(Granting Defendants' Motion for Summary Judgment and
Denying Plaintiff's Motions for Summary Judgment)

Seaun Farthing, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. Farthing names A. White, T. Terry, L.A. Watson, I. Godfrey, C. Evans, and L. Johnson as Defendants.[1] Farthing raising the following claims in his Complaint:[2]

> Claim 1    Following a fight amongst other inmates, Defendants Godfrey, Evans, and Johnson used excessive force in restraining Farthing:
> (a)    in violation of the Eighth Amendment (ECF No. 1–2, at 24);
> (b)    and amounting to assault and battery under Virginia tort law (*id.*); and,
> (c)    in violation of the Virginia Constitution (*id.* at 1).
>
> Claim 2    Defendant Terry violated Farthing's due process rights by moving Farthing to restrictive housing following the altercation amongst the inmates. (*Id.* at 8.)

---

[1] In Claim 5, Farthing seeks to bring claims against the Virginia Department of Corrections and St. Brides Correctional Center. Farthing, however, failed to identify these entities as defendants in his in the caption of his Complaint. Nevertheless, as explained below, *infra* Part I.A, Claim 5 lacks legal merit and will be dismissed.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions.

| | | |
|---|---|---|
| Claim 3 | During Farthing's institutional hearing on the charge of refusing to obey a direct order: | |
| | (a) | Defendant Watson violated Farthing's right to due process by refusing to review the video recording of the incident, found Farthing guilty, and "provided an inadequate written disposition of the charges" (*id.* at 8–9, 24); and, |
| | (b) | Defendant White violated Farthing's right to due process by affirming on appeal Farthing's disciplinary conviction (*id.* at 24). |
| Claim 4 | Defendants Terry and White are liable to Farthing for the excessive force employed by Godfrey, Evans, and Johnson under a theory of supervisory liability. (*Id.* at 24.) | |
| Claim 5 | The Virginia Department of Corrections ("VDOC") and St. Brides Correctional Center ("SBCC") are liable for the excessive force employed by their employees in violation of the Eighth Amendment on theories of inadequate training and municipal liability. (*Id.* at 13–16.) | |

Farthing and Defendants both have moved for summary judgment.[3] Both Farthing and Defendants agree that there are genuine issues of material fact in dispute that preclude summary judgment with respect to Claim 1(a), Farthing's Eighth Amendment, excessive force claim. (ECF No. 39, at 3–4.) Defendants also acknowledge that material disputes of fact preclude summary judgment with respect to Claim 1(b), Farthing's state law assault and battery claim. For the reasons that follow, Claims 1(c), 2, 3(a), 3(b), 4, and 5 will be dismissed.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[3] Farthing filed two separate Motions for Summary Judgment (ECF Nos. 38, 49). For the sake of clarity, the Court will consider all of Farthing's arguments raised in the motions together.

2

of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting

3

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Prior to addressing the parties' fact-dependent arguments for summary judgment and the evidence submitted in support thereof, it is appropriate to dispense with Farthing's claims that lack a foundation in law.

### A. Farthing's Legally Deficient Claims

In Claim 5, Farthing seeks to bring federal constitutional claims against the VDOC and SBCC. In order to state a viable claim under 42 U.S.C. § 1983,[4] a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Neither "states nor governmental entities that are considered arms of the State for 11th amendment purposes are persons under Section 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989). The VDOC and the SBCC are not persons amenable to suit under § 1983. *Staples v. Virginia Dep't of Corr.*, 904 F. Supp. 487, 490

---

[4] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

4

(E.D. Va. 1995). Accordingly, Claim 5 and Farthing's claims for monetary damages against Defendants in their official capacities, will be dismissed.

In Claim 1(c), Farthing seeks to bring a claim for excessive force under Article I, § 9 of the Virginia Constitution.[5] That provision, however, fails to provide a private cause of action. *Delk v. Moran*, No. 7:16CV00554, 2019 WL 1370880, at *4 (W.D. Va. Mar. 26, 2019) (citing *Quigley v. McCabe*, No. 2:17CV70, 2017 WL 3821806, at *5 (E.D. Va. Aug. 30, 2017)). Accordingly, Claim 1(c) will be dismissed.

### B. Evidence Submitted by the Parties

In support of his Motions for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment, Farthing submitted, *inter alia*, his own sworn declaration[6] (ECF No. 41), his own affidavit ("Farthing Aff.," ECF No. 50–2), and some institutional records (*see, e.g.*, ECF No. 50–1). In opposition to Farthing's Motions for Summary Judgment, and/or in support of their own Motion for Summary Judgment, Defendants submitted, *inter alia*: the affidavit of Assistant Warden Terry ("Terry Aff.," ECF No. 45–1); the affidavit of Inmate Hearings Officer Watson ("Watson Aff.," ECF No. 45–2); the affidavit of Sergeant Evans ("Evans Aff.," ECF No. 47–1); and, the affidavit of Health Service Administrator Searleman ("Searleman Aff.," ECF No. 47–3). Defendants also submitted video footage of the Farthing altercation with Defendants Godfrey, Evans, and Johnson. Additionally, Defendants submitted a number of

---

[5] That provision prohibits "cruel and unusual punishments." Va. Const. art. I, § 9.
[6] It is doubtful, however, that the Farthing's Declaration amounts to admissible evidence because it is not signed by Farthing and therefore really not sworn to under penalty of perjury.

5

institutional records and VDOC operating procedures that the Court refers to by their CM/ECF designation.

In light of the foregoing submissions, the Court finds that the facts are established for purposes of resolving the Motions for Summary Judgment.

## II. SUMMARY OF RELEVANT FACTS

The parties acknowledge material facts remain in dispute with respect to Farthing's excessive force claims. Nevertheless, the circumstances that gave rise to Farthing's excessive force claims also touch upon Farthing's other claims for relief. The facts provided below are recited for purposes of resolving Farthing's remaining claims.

### A. Circumstances Leading to Farthing's Charge of Failing to Obey a Direct Order

Around 4:17 p.m. on September 19, 2018, at SBCC, a fight broke out among two inmates in the bathroom of building 360A, Farthing's housing unit. (Farthing Aff. ¶ 4.) Farthing swears that he was not involved in the fight. (*Id.*) Correctional Officer Basnight encountered Farthing in the bathroom after the fight had concluded.[7] (*Id.*) "Officer Basnight ordered Farthing to put his hands behind his back and walk into the vestibule." (*Id.*)

Farthing swears that he complied with the order, but asked that someone check his hands to confirm that he had not been involved in the fight. (*Id.*) Sergeant Evans swears that "Farthing refused orders to put his hands behind his back to be restrained. Farthing

---

[7] According to Farthing, by the time Correctional Officer Basnight entered the bathroom, one of the inmates involved in the fight already had left the bathroom. (Farthing Aff. ¶ 4.)

6

continually argued that he would not be restrained." (Evans Aff. ¶ 4.) According to Evans, although he tried to reason with Farthing, Farthing "continued to resist and refused to be handcuffed." (*Id.*) At this juncture, Sergeant Evans along with Lieutenant Godfrey and Correctional Officer Johnson used physical force to secure Farthing. (*Id.*) The parties dispute whether the force employed was excessive. After Farthing was secured, he was taken to the medical unit to be examined. (Terry Aff. ¶ 4.)

### B. Farthing's Assignment to General Detention

"Once cleared by medical, Farthing was assigned to General Detention status and moved to the Restrictive Housing Unit . . . and institutional disciplinary charges were placed against him." (*Id.*) Specifically, "[o]n September 19, 2018, Correctional Officer L. Johnson placed an institutional disciplinary charge against offender Farthing for Disobeying an Order . . . . Officer Johnson reported that Farthing had refused orders to be handcuffed and instead became aggressive." (Watson Aff. ¶ 5.) Farthing remained in the Restrictive Housing Unit from September 19, 2018, until October 3, 2018, when he was released back to a general population housing assignment. (Terry Aff. ¶ 12.)

### C. Farthing's Conviction of the Institutional Charge of Disobeying a Direct Order

On September 25, 2018, Inmate Hearings Officer Watson conducted a hearing on the charge that Farthing had disobeyed a direct order. (Watson Aff. ¶ 6.) With respect to that hearing,

> Farthing submitted a Reporting Officer Response Form, which was completed by Officer Johnson. Farthing also requested witness statements from Sergeant Evans and Officer Basnight. All statements were obtained and read into the record at the hearing . . . . Farthing also requested that

7

> [Watson] review the video [of the incident] prior to the hearing. [Watson] did not personally review the video prior to the hearing, but advised Farthing that if it was determined necessary during the hearing, [she] would stop the hearing to review the video. Farthing was found guilty of the charge based on the reporting officer's statement that when he attempted to handcuff Farthing, the offender pulled his hand away. Farthing was penalized with 60 day loss of telephone and visitation privileges. He was not penalized with the loss of accumulated good time credits.

(*Id.*)

Farthing appealed the conviction, complaining that Watson had failed to review "the video, which allegedly would have shown that he was 'illegally restrained.'" (*Id.* ¶ 7.) Assistant Warden White upheld the conviction and noted that Watson "was not required to view the camera footage." (*Id.*) Furthermore, the level at which Farthing earns good time credits was not reduced as a result of his institutional conviction. (*Id.* ¶ 8.)

### III. ANALYSIS

#### A. Alleged Denial of Due Process Claims

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). As explained below, Farthing fails to demonstrate that the Defendants' action affected any protected liberty interest.

8

### 1. The Constitution Fails to Confer a Liberty Interest in Avoiding Placement on Restrictive Housing Status or in Brief Deprivations of Telephone and Visiting Privileges

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in avoiding a brief placement on the Restrictive Housing Unit or the temporary suspension of telephone and visitation privileges. *See id.*; *Berryman v. Mullen*, No. 1:16CV47, 2017 WL 3531098, at *6 (N.D. W. Va. Aug. 17, 2017) (concluding that inmate did not enjoy a liberty interest in avoiding placement "in a 'strip cell' for 11 days without his own clothing, hygiene products, or other personal property").

### 2. Farthing Fails to Demonstrate the Existence of a State-Created Liberty Interest in Avoiding Placement in the Restrictive Housing Unit

Demonstrating the existence of a state-created liberty interest, requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995);

9

*see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). The United States Court of Appeals for the Fourth Circuit has observed that, "[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to confinement in the general population and later transferred to security detention." *Id.* at 528–29 (citing *Prieto*, 780 F.3d at 252). Nonetheless, "[t]he mere limitations on privileges, property, and activities for administratively segregated inmates 'fall[ ] within the expected perimeters of the sentence imposed by a court of law.'" *Hubbert v. Washington*, No. 7:14CV00530, 2017 WL 1091943, at *5 (W.D. Va. Mar. 22, 2017) (quoting *Sandin*, 515 U.S. at 485).

*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation presumptively constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court rejected Conner's claim that he enjoyed a liberty interest in avoiding confinement in punitive segregation for thirty (30) days. *Id.* at 487. The dissent observed:

> In the absence of the punishment, Conner, like other inmates in [the] general prison population would have left his cell and worked, taken classes, or mingled with others for eight *hours* each day. As a result of disciplinary segregation, however, Conner, for 30 days, had to spend his entire time alone in his cell (with the exception of 50 *minutes* each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains).

*Id.* at 494 (Breyer, J., dissenting) (citations omitted). However, the majority concluded that the foregoing conditions "did not present the type of atypical, significant deprivation in which a State might *conceivably* create a liberty interest." *Sandin*, 515 U.S. at 486 (emphasis added).

In assessing whether deprivation constitutes an atypical and significant deprivation the Supreme Court has focused on the "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation [or other restrictive confinement] is for an indefinite period; and (3) whether assignment to administrative segregation [or other restrictive confinement] had any collateral consequences on the inmate's sentence." *Incumaa*, 791 F.3d at 530. Here, Farthing's placement in Restrictive Housing status had no collateral consequence upon his sentence and was not for an indefinite period, but only lasted from September 19, 2018, until October 3, 2018. Thus, the second and third

11

factors do not suggest that Farthing had a protected liberty interest in avoiding Restrictive Housing status. Furthermore, with respect to the relative magnitude of the confinement restrictions, Farthing has supplied no facts as to what life was like in the general prison population relative to Restrictive Housing status.

Farthing has failed to demonstrate that the conditions he experienced during his brief confinement on Restrictive Housing Unit were significantly harsher than the conditions described in *Sandin* such that a State might conceivably intend to create a liberty interest in avoiding the conditions. Farthing fails to demonstrate his placement in the Restrictive Housing Unit constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Beverati*, 120 F.3d at 504.[8] *But see Incumaa*, 791 F.3d at 530–32 (concluding solitary confinement for twenty years involved onerous,

---

[8] In *Beverati*, the Fourth Circuit found that the inmate plaintiffs did not enjoy a liberty interest in avoiding a six-month stay in administrative segregation where they described the conditions as follows:

> They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Beverati*, 120 F.3d at 504. The Fourth Circuit concluded that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.*

severely restrictive conditions and constituted an atypical and significant hardship). Furthermore, Farthings fails to show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from" placement in the Restrictive Housing Unit. *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed*, 209 F.3d at 66). Because Farthing fails to demonstrate that he enjoys a protected liberty interest in avoiding placement in the Restrictive Housing Unit, his due process claim fails. Accordingly, Claim 2 will be dismissed.

### 3. Farthing Fails to Demonstrate that He Enjoys a State-Created Liberty Interest in Avoiding the Temporary Loss of Telephone and Visitation Privileges.

Next, in Claim 3, Farthing contends that he was denied due process in conjunction with his institutional conviction for failing to obey a direct order. As a result of that conviction, Farthing was penalized with the loss of sixty days of telephone and visitation privileges. Farthing, however, fails to demonstrate that he enjoys a protected liberty interest in avoiding the temporary deprivation of phone and visitation privileges. *Anbessa v. Riddick*, No. 3:15CV212, 2016 WL 1755872, at *3 (E.D. Va. May 2, 2016) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989); *Solliday v. Fed. Officers*, 413 F. App'x. 206, 210 (11th Cir. 2011); *Conn v. Stolle*, No. 1:11CV758 (CMH/TCB), 2011 WL 3321136, at *3 (E.D. Va. July 29, 2011)). Accordingly, Farthing's due process claims lack merit. Claims 3(a) and 3(b) will be dismissed.

### B. Supervisory Liability

In Claim 4, Farthing contends that Defendants Terry and White are liable for the excessive force employed by Godfrey, Evans, and Johnson under a theory of supervisory

13

liability. In order to survive summary judgment on a claim of supervisory liability a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that [his or] h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (second alteration in original) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Farthing fails to submit any evidence to support any of the foregoing factors. Accordingly, Claim 4 will be dismissed.

### C. Injunctive Relief

Farthing seeks injunctive relief in the form of an order enjoining Defendants from transferring him to another prison. Defendants contend that such relief is precluded by 18 U.S.C. § 3626(a)(1) which provides:

> Prospective relief in any civil action with respect to prison conditions shall extend *no further than necessary to correct the violation of the Federal right of a particular plaintiff* or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1) (emphasis added). Farthing's remaining claim for relief alleges excessive force by Defendants Godfrey, Evans, and Johnson. Farthing fails to articulate and the Court fails to discern how enjoining the VDOC from transferring Farthing to

14

another prison is necessary to correct the remaining, alleged constitutional violation. Accordingly, Farthing's claim for injunctive relief will be dismissed.

## IV. CONCLUSION

Farthing's Motions for Summary Judgment (ECF Nos. 38, 49) will be denied. Defendants' Motion for Summary Judgment (ECF No. 44) will be granted. Farthing's claims for injunctive relief and claims for monetary relief against Defendants in their official capacities will be dismissed. Claims 1(c), 2, 3(a), 3(b), 4, and 5 will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Feb. 3 2021
Richmond, Virginia